**VALENTI LAW APC**
Matthew D. Valenti (SBN 253978)
E-mail: mattvalenti@valentilawapc.com
10174 Austin Drive #1116
Spring Valley, CA 91979
Phone: (619) 540-2189

Attorney for Stewart Thompson

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART THOMPSON,<br><br>      Plaintiff,<br><br>  vs.<br><br>UNIQLO USA LLC; and DOES 1-10,<br><br>      Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>DENIAL OF CIVIL RIGHTS AND ACCESS TO PUBLIC FACILITIES TO PHYSICALLY DISABLED PERSONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, (42 U.S.C. §12101, *et seq*.) AND THE UNRUH CIVIL RIGHTS ACT, (CALIFORNIA CIVIL CODE §51, *et seq*.)<br><br><u>DEMAND FOR JURY TRIAL</u> |

*"[T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."* 42 U.S.C. §12101(a)(8).

*"It is the policy of this state to encourage and enable individuals with a disability to participate fully in the social and economic life of the state ..."* California Government Code §19230(a).

Plaintiff STEWART THOMPSON (hereinafter referred to as "Plaintiff") complains of UNIQLO USA LLC, a Delaware limited liability company; and DOES 1-10, (each, individually a "Defendant" and collectively "Defendants") and alleges as follows:

## I.   PARTIES

1. Plaintiff STEWART THOMPSON is a California resident and a qualified physically disabled person. He has paralysis and uses a wheelchair for mobility. Mr. Thompson prides himself on his independence and on empowering other disabled persons to be independent.

2. Defendants UNIQLO USA LLC, and DOES 1-10, are and were the owners, operators, lessors and/or lessees of the subject business, property, and facility at all times relevant in this Complaint.

3. Mr. Thompson does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of and alleges a joint venture and common enterprise by all such Defendants. Mr. Thompson is informed and believes that each of the Defendants herein, including DOES 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Mr. Thompson will seek leave to amend when the true names, capacities, connections,

and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

4. Defendants own and owned the property located at 3333 Bristol Street Space 1064-1084, Costa Mesa, CA 92626 ("Subject Property") at all relevant times.

5. Defendants operate and operated a clothing store doing business as UNIQLO ("clothing store"), located at the Subject Property, at all relevant times.

6. Mr. Thompson alleges that the Defendants have been and are the owners, franchisees, lessees, general partners, limited partners, agents, trustees, employees, subsidiaries, partner companies and/or joint ventures of each of the other Defendants, and performed all acts and omissions stated herein within the course and scope of such relationships causing the damages complained of herein.

## II.  JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, U.S.C. §12101, *et seq*.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising out of the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. U.S.C. §1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Mr. Thompson's causes of action arose in this district.

## III.  FACTS

10. Mr. Thompson uses a wheelchair for mobility.

11. Defendants' business is open to the public, a place of public accommodation, and a business establishment.

12. Mr. Thompson has visited Uniqlo on two occasions. Unfortunately, on each visit, the lack of an accessible self-service kiosk made him feel unwelcome. The difficulty this caused made him feel that Uniqlo doesn't respect their disabled customers or consider their accessibility needs.

13. On his first visit he was directed to the self-serve kiosk by an employee to make his purchase. As Mr. Thompson attempted to make his purchase, he realized that the self-check-out touch screen is placed too high to be able to see and/or utilize from his wheelchair. He was unable to see the check-out screen to confirm the price of his item and any other relevant information contained on the screen. He was also unable to reach the screen to use it or to tilt it downward so he could access the information. Mr. Thompson had to lean forward considerably in his chair and strain his neck and back in a futile attempt to read the information contained on the device.

14. Mr. Thompson found that the screens are locked in place and are unable to be adjusted. There was no way for him to confirm his purchase amount or make other selections on the touch screen before using the point-of-sale device to complete his transaction. His wife was with him on this occasion and was able to help him complete his purchase. This was very embarrassing to Mr. Thompson and made him feel less independent, and also made him feel that he was not afforded full and equal access to the store.

15. Mr. Thompson decided to revisit Uniqlo on February 9, 2026. He was hoping they had updated their self-serve kiosks since his last visit to be more accessible. On this visit he purchased a shirt. The receipt he received for his purchase is shown in the photo below.

//
//
//
//

COMPLAINT - 4

[Receipt image: UNIQLO South Coast Plaza, 3333 Bristol Street Space 1064-1084 Costa Mesa, CA 92626, Tel: 1-877-486-4756. Receipt 02/09/2026 <0061> [16:03]. SUPIMA cotton T 2000210664472 $19.90 T. Shopping Bag $0.10 N. Units sold 1. Subtotal $20.00. Tax $1.54. TOTAL $21.54. Payment Method Card / Contactless Master $21.54. Customer no. *********8946. Receipt no. 0061-2026-02-09-35-0022.]

16. On this latest visit, Mr. Thompson experienced the same barriers to accessibility he encountered on his first visit. He was shopping alone this time and went to the self-check-out kiosk to make his purchase. Again, Mr. Thompson was unable to see the check-out screen and strained his back to try to reach and read the screen. He was unable to use the screen or even to see it to confirm the price of the shirt he was purchasing. He was forced to ask an employee for assistance. Mr. Thompson was embarrassed to require assistance from an employee while everyone else was able to check out with ease. Once again, Defendants made him feel less independent and feel that he was not afforded full and equal access to the store

17. Unfortunately, during Mr. Thompson's visits, Defendants did not offer persons with disabilities equivalent facilities, privileges, advantages, and accommodations offered to other persons.

18. Mr. Thompson encountered barriers that interfered with and denied him the ability to use and enjoy the goods, services, privileges, advantages, and accommodations offered by Defendants at the Subject Property.

19. These barriers violate one or more standards of the Americans with Disabilities Act ("2010 ADA") and/or the California Building Codes ("2025 CBC").

20. Each kiosk has a touch-enabled check-out screen which shows the purchase price of each item, a summary of charges which customers refer to before finalizing a purchase, and other check-out features. These screens are placed above and away from the edge of the counter. This results in an obstructed high reach without clear floor space beneath equal to or more than the reach depth over the counter and/or a side reach containing an obstruction (the kiosk itself), the depth of which is more than ten inches. This places the check-out screens out of reach for persons using a wheelchair such as Mr. Thompson. 2010 ADA §308.2.2; 2010 ADA §308.3.1; 2010 ADA §308.3.2; 2010 ADA §309.3; 2025 CBC 11B-308.2.2; 2025 CBC 11B-308.3.1; 2025 CBC 11B-308.3.1; 2025 CBC 11B-707.

21. The screens are also immovable. The screens are placed at such an angle that a person using a wheelchair is unable to see the information on the screen or operate the device. If the screens were within reach and adjustable, Mr. Thompson could have reached the screen to adjust the angle, touched the screen during his transaction, read what was on the screen, and made his purchase independently. 2010 ADA §205.5.1; 2010 ADA §308.2.2; 2010 ADA §309.2; 2010 ADA §309.3; 2010 ADA §309.4; 2025 CBC 11B-205.5.1; 2025 CBC 11B-308.2.2; 2025 CBC 11B- 309.2; 2025 CBC 11B-309.3; 2025 CBC 11B- 309.4.

22. The formal or informal policies and procedures of Uniqlo create barriers to accessibility for their disabled customers such as Mr. Thompson.

23. The photos below show one or more of these violations.




24. The barriers existed during Mr. Thompson's visits to Uniqlo. Mr. Thompson personally encountered these barriers.

25. These inaccessible conditions and barriers denied Mr. Thompson full and equal access and caused him difficulty, discomfort, and embarrassment.

26. Because of the lack of a compliant self-check-out kiosk, Mr. Thompson was forced to strain his neck and back as he struggled to reach and utilize the check-out screen independently, causing discomfort and embarrassment. Mr. Thompson had to rely on his wife to help him complete his first purchase and was forced to request assistance from an employee on the second visit to Uniqlo. Shopping at Uniqlo caused discomfort, embarrassment, and was degrading to Mr. Thompson.

27. These barriers denied Mr. Thompson full and equal access due to his disability because, *inter alia*, they caused Mr. Thompson anxiety, difficulty,

discomfort, and embarrassment which patrons who do not use a wheelchair for mobility do not suffer when they access the Subject Property.

28. Mr. Thompson has Article III standing because he visited Uniqlo to go clothes shopping. The Subject Property is conveniently located and in the general area where he lives, shops, goes to medical appointments, visits family and friends, recreates, and does other normal activities in his daily life. Mr. Thompson intends to return to the Subject Property in the near future to go clothes shopping independently after the accessibility barriers alleged herein have been removed.

29. Mr. Thompson alleges that Defendants knew that the barriers prevented equal access. Mr. Thompson further alleges that Defendants had actual or constructive knowledge that the architectural barriers prevented equal access, and that the noncompliance with the Americans with Disabilities Act and Title 24 of the California Building Code regarding accessible features was intentional.

30. Defendants have obstructed or failed to maintain, in working and useable conditions, those features necessary to provide ready access to persons with disabilities. "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

31. The State of California Department of General Servicers, Division of the State Architect (DSA) provides commentary to 2025 CBC 11B-108 as follows:

> Features for accessibility must be permanently functional, unobstructed and may not be removed. It is not sufficient to provide features such as accessible routes, parking, elevators, ramps or signage if those features are not maintained in a manner that enables individuals with disabilities to use them.

DSA, 2019 California Access Compliance Advisory Reference Manual, p.84.

32. Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their property more accessible

to their mobility impaired customers. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

33. To date, Defendants refuse to remove these barriers, in violation of the law, willfully depriving disabled persons including Mr. Thompson of important civil rights.

34. On information and belief, Mr. Thompson alleges that the Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious. During all relevant times Defendants had authority, control, and dominion over these conditions and therefore the absence of accessible facilities was not a mishap, but rather an intentional act.

35. The barriers to access are listed above without prejudice to Mr. Thompson citing additional barriers to equal access by an amended complaint after inspection by Plaintiff's Certified Access Specialist (CASp). *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Mr. Thompson, are barriers Mr. Thompson may encounter when he returns to the premises. All public accommodations must be brought into compliance with all applicable federal and state accessibility requirements.

**FIRST CAUSE OF ACTION**

Violation of the Americans With Disabilities Act of 1990

(42 U.S.C. §12101, *et seq*.)

(Against All Defendants)

36. Mr. Thompson alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

37. More than thirty years ago, the 101st United States Congress found that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination…in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. §12101(a).

38. In 1990 Congress also found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals," but that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101(a).

39. In passing the Americans with Disabilities Act of 1990, which was signed into law by President George H. W. Bush on July 26, 1990 (hereinafter the "ADA"), Congress stated as its purpose:

"It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to-day by people with disabilities."

42 USC §12101(b).

40. As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities" (42 U.S.C. §12181 *et seq*.). Title III of the ADA prohibits discrimination against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

41. The specific prohibitions against discrimination include, *inter alia*, the following:

- 42 U.S.C. §12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

- 42 U.S.C. §12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

- 42 U.S.C. §12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

- 42 U.S.C. §12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

- 42 U.S.C. §12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

42. Mr. Thompson is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

43. The acts and omissions of Defendants set forth herein were in violation of Mr. Thompson's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

44. The removal of each of the physical and policy barriers complained of by Mr. Thompson as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of §12181 and §12182 of the ADA. Removal of each and every one of the architectural and/or policy barriers complained of herein was already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per §12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per §12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

45. On information and belief, as of the date of Mr. Thompson's encounter at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Mr. Thompson and to other mobility disabled persons in other respects, which violate Mr. Thompson's right to full and equal access and which discriminate against Mr. Thompson on the basis of his disabilities, thus wrongfully

denying to Mr. Thompson the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. §12182 and §12183 of the ADA.

46. Defendants' actions continue to deny Mr. Thompson's rights to full and equal access and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Mr. Thompson the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA, 42 U.S.C. §12182.

47. Further, each and every violation of the Americans With Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code §51(f), §52, §54(c) and §54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code §54.3 and §55.

## SECOND CAUSE OF ACTION

Violation of the Unruh Civil Rights Act

(California Civil Code §51, *et seq*.)

(Against All Defendants)

48. Mr. Thompson alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

49. California Civil Code §51 provides that physically disabled persons are free and equal citizens of the state, regardless of their medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, **disability, or medical condition** are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code §51(b) (emphasis added).

50. California Civil Code §51.5 also states, in part: "No business, establishment of any kind whatsoever shall discriminate against…any person in this state on account" of their disability.

51. California Civil Code §51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

52. California Civil Code §52 provides that the discrimination by Defendants against Mr. Thompson on the basis of his disability constitutes a violation of the general antidiscrimination provisions of §51 and §52.

53. Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code §52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

54. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code §51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code §52. Per Civil Code §51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

55. The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code §51 and §52.

56. The discriminatory denial of equal access to and use of the described public facilities caused Mr. Thompson difficulty, discomfort, and embarrassment.

57. As a proximate result of Defendants' action and omissions, Defendants have discriminated against Mr. Thompson in violation of Civil Code §51 and §52, and are responsible for statutory, compensatory and actual damages to Mr. Thompson, according to proof.

**PRAYER FOR RELIEF**

Mr. Thompson has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Mr. Thompson has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Mr. Thompson is granted the relief he requests. Mr. Thompson and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.

The need for relief is critical because the civil rights at issue are paramount under the laws of the United States of America and the State of California.

WHEREFORE, Mr. Thompson prays judgment against Defendants, and each of them, as follows:

1. Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the Subject Property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA §12188(a) and state law directing Defendants to provide facilities and services usable by Mr. Thompson and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies; and to train Defendants' employees and agents

how to recognize disabled persons and accommodate their rights and needs;

2. Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

3. Award to Mr. Thompson all appropriate damages, including but not limited to actual and statutory damages according to proof;

4. Award to Mr. Thompson all reasonable attorney fees, litigation expenses, and costs of this proceeding pursuant to 42 U.S.C §12205 and California Civil Code §52; and

5. Grant such other and further relief as this Court may deem just and proper.

DATED: February 11, 2026             **VALENTI LAW APC**

                                     By: */s/ Matthew D. Valenti*
                                          Matthew D. Valenti
                                          Attorney for Plaintiff
                                          Stewart Thompson

# JURY DEMAND

Mr. Thompson hereby demands a trial by jury for all claims and issues for which a jury is permitted.

DATED: February 11, 2026

**VALENTI LAW APC**

By: */s/ Matthew D. Valenti*
Matthew D. Valenti
Attorney for Plaintiff
Stewart Thompson